## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RATES TECHNOLOGY INC.,<br><br>          Plaintiff,<br><br>    v.<br><br>PRIMUS TELECOMMUNICATIONS, INC. and<br>PRIMUS TELECOMMUNICATIONS GROUP<br>INC.,<br><br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       C. A. No. 07-441 JJF |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PLAINTIFF'S COMPLAINT**

Of Counsel:

James L. Quarles, III
James M. Dowd
WILMER CUTLER PICKERING
   HALE and DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6236

Dated: September 19, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

*Attorneys for Primus Telecommunications, Inc.*
*and Primus Telecommunications Group Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

I.    BACKGROUND ........................................................................................... 2

    A.    Primus's Accused Lingo Product........................................................ 2

    B.    Primus Explains Why Lingo Does Not Practice RTI's Patents;
           RTI Demands Cost of Litigation...................................................... 3

    C.    RTI Has A Pattern Of Asserting These Patents In "Bad Faith" ........... 4

    D.    RTI Failed to Reveal That The '085 Patent Was In Re-Examination ...... 6

II.    ARGUMENT ............................................................................................... 7

    A.    Faced With Specific Reasons Why Lingo Does Not Practice The
           Asserted Claims, RTI May Not Rest On Uninformed "Belief" ............ 8

         1.    RTI Pled No Good-Faith Basis To Believe The '085 Claims
               Are Infringed........................................................................ 9

         2.    RTI Pled No Good-Faith Basis To Believe The '769 Claims
               Are Infringed........................................................................ 10

         3.    RTI Had Every Reason To Know the Facts of Lingo.............. 12

    B.    No Asserted '08 Claim Presently Exists For Adjudication................... 12

    C.    At a Minimum, This Case Should Be Stayed Pending Resolution of
           the PTO's Re-Examination Proceedings ............................................ 13

III.    CONCLUSION ............................................................................................ 15

RLF1-3202519-1

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
  C.A. No. 05-590 GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006) ............... 13, 14, 15

*Bell Atlantic Corp. v. Trombley*,
  ___ U.S. ___, 127 S. Ct. 1955 (2007) ............... 1

*Edberg v. CPI—The Alternative Supplier, Inc.*,
  156 F. Supp. 2d 190 (D. Conn. 2001) ............... 8

*Emery v. United States*,
  920 F. Supp. 788 (W.D. Mich. 1996) ............... 10, 11

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ............... 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) ............... 11

*Gersten v. Rundle*,
  833 F. Supp. 906 (S.D. Fla. 1993) ............... 10, 11

*Gioello Enters. Ltd. v. Mattel, Inc.*,
  2001 WL 125340, CA. No. 99-374 GMS (D. Del. Jan. 29, 2001) ............... 13, 14

*Graves v. Lowery*,
  117 F.3d 723 (3d Cir. 1997) ............... 7

*MediaCom Corp. v. Rates Tech. Inc.*,
  34 F. Supp. 2d 76 (D. Mass. 1998) ............... 9

*Merck & Co. v Apotex, Inc.*,
  488 F. Supp. 2d 418 (D. Del. 2007) ............... 9

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) ............... 8, 9

*Nami v. Fauver*,
  82 F.3d 63 (3d Cir. 1996) ............... 7

*Open LCR com, Inc. v. Rates Tech. Inc.*,
  112 F. Supp. 2d 1223 (D. Colo. 2000) ............... 1

RLF1-3202497-1

*Stratos Lightwave, Inc. v. Picolight, Inc.,*
    2005 WL 631308 (D. Del. Mar. 23, 2005) ..................................................8

*TM Patents, L.P. v. Int'l Bus. Mach. Corp.,*
    72 F. Supp. 2d 370 (S.D.N.Y. 1999)..................................................8, 9

*Texaco, Inc. v. Borda,*
    383 F.2d 607 (3d Cir. 1967)..................................................13

*United States v. Vespe,*
    868 F.2d 1328 (3d Cir. 1989)..................................................9

*United Sweetener USA, Inc. v. Nutrasweet Co.,*
    766 F. Supp. 212 (D. Del. 1991)..................................................13, 14

## STATUTES AND REGULATIONS

35 U.S.C. § 271(a) ..................................................12

37 C.F.R. § 1.131 ..................................................7

## OTHER AUTHORITY

Wright & Miller, 5B Fed. Prac. & Proc. Civ. 3d § 1357 ..................................................7

RLF1-3202497-1

Rates Technology Inc.'s ("RTI's") complaint should be dismissed pursuant to Federal Rule 12(b)(6), or at a minimum stayed, for at least two reasons. First, before being served with RTI's complaint, Primus Telecommunications, Inc. and Primus Telecommunications Group, Incorporated (collectively "Primus") gave RTI repeated notice of numerous limitations of its patent claims that do not exist in Primus's accused Lingo product. Among other missing elements, Primus informed RTI of the factual reasons why Lingo lacks the "housing," "switch means," "means . . . for generating a current" limitations of U.S. Patent No. 5,425,085 (the "'085 patent"), and lacks the "predetermined date and time," "transmitting," and "verifying" limitations of U.S. Patent No. 5,519,769 (the "'769 patent").[1] But RTI made no investigation. Instead, it resorted to pleading "upon information and belief." That does not fulfill RTI's obligation. Once RTI had actual knowledge of the factual reasons why Lingo lacks specific claim limitations, RTI was obligated to do more than plead a "belief" that the limitation is "likely" to be there. *See, e.g., Bell Atlantic Corp. v. Trombley*, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Indeed, on remarkably similar circumstances asserting the same patents, RTI has been found to have made "bad faith" claims of infringement. *See Open LCR.com, Inc. v. Rates Tech. Inc.*, 112 F. Supp. 2d 1223, 1228 (D. Colo. 2000) (finding "a threshold showing of bad faith on evidence that RTI persisted with threats of litigation while disregarding any possibility that Open-LCR's technology does not infringe RTI's patents").

Second, whatever may be RTI's "information and belief" about whether Lingo practices its patent claims, the fact is that those claims are now in re-examination and stand rejected as un-patentable. RTI's complaint against Primus was filed eighteen months after the PTO notified

---

[1] *See* Declaration of James M. Dowd ("Dowd Decl."), Exs. A ('085 patent) and B ('769 patent).

RTI of the existence of material new questions of patentability with respect to the '085 patent requiring re-examination of that patent's validity, two months after the PTO had found the asserted '085 claims anticipated under 35 U.S.C. § 102(b) and obvious under 35 U.S.C. § 103, and at a time when those claims stand rejected.[2] Neither this Court nor Primus should be forced to litigate patent claims that may never survive re-examination. For these reasons, and those set forth more fully below, RTI's Complaint should be dismissed pursuant to Rule 12(b)(6) or, at a minimum, the case should be stayed pending resolution of the PTO's re-examination.

## I. BACKGROUND

### A. Primus's Accused Lingo Product

Primus's accused Lingo product allows a customer to make a telephone call across the Internet using an Analog Telephone Adapter ("ATA"). Customers can use standard analog telephones designed to operate with a Public Switched Telephone Network ("PSTN") network line to make calls using a Voice over Internet Protocol ("VoIP"). The ATA converts an analog PSTN telephone call request to a VoIP call request, allowing calls to be routed through the customer's internet modem. Essentially, the Lingo ATA splits the user's high-speed broadband Internet connection, allowing the Internet connection to work as it did before installation of the ATA (e.g., sending emails and other web data to the user's personal computer) and allowing phone calls to and from the user's telephone to be sent through the Lingo ATA.

The Lingo ATA acts as an adapter and, unlike the device claimed in RTI's patents, does not participate in call routing, does not permit a network to provide a current to a subscriber telephone, does not contain a switch that passes a network current to a telephone, and does not contain a database that stores billing rate parameters.

---

[2]   As set forth below, only two dependent claims, claims 6 and 17, were not rejected as anticipated and obvious. Both claims required a "substantially cylindrical" "housing" that, it is undisputed, is not used by Lingo.

### B.    Primus Explains Why Lingo Does Not Practice RTI's Patents; RTI Demands Cost of Litigation

RTI and its President, Gerald J. Weinberger, have sent innumerable letters, emails, and telephone calls to Primus threatening litigation that would "result in trebled damages, legal fees, permanent injunction, and recalls of Lingo VoIP products." (Dowd Decl. Ex. C (Letter from Gerald J. Weinberger to K. Paul Singh and John F. DePodesta (Jan. 31, 2007)).) In responding to these threats, Primus has consistently asked RTI to explain a specific basis for its contentions against Lingo. RTI has refused to do so. (Dowd Decl. Ex. D (Letter from Weinberger to K. Paul Singh and John F. DePodesta (Feb. 27, 2007)).)

Following several cycles of such exchanges, Primus informed RTI on April 9, 2007 that it would conduct its own independent analysis of RTI's patents and Primus's Lingo technology over the next thirty days. Primus summarized the results from this analysis to RTI in an April 24, 2007 letter detailing reasons why Lingo does not infringe the RTI patents, and repeating its request that RTI provide Primus with any information suggesting otherwise. (Dowd Decl. Ex. E (Letter from DePodesta to Weinberger (Apr. 23, 2007)).) With respect to the '085 patent, for example, Primus explained that there is no connection between any Primus equipment and any subscriber telephone except through an ATA device, and that no Primus ATA is capable of switching between a network generated current supplied to a subscriber telephone and a second current source generated by the ATA itself that is equal to but separate from the network current. Accordingly, Lingo cannot practice the "switch means" or "means . . . for generating a current" limitations of the '085 patent's claims. (Dowd Decl. Ex. A ('085 patent).) Likewise, Primus explained, the '769 patent claims each require updating a database that stores billing rate parameters by "connecting at a predetermined time and date via a data transfer line the call rating device to a rate provider having billing rate parameters . . . ." (Dowd Decl. Ex. B ('769 patent).)

- 3 -

Primus's ATA devices have no database that stores billing rate parameters. Nor is there a rate parameter database updated "at a predetermined time and date via a data transfer line" in any Lingo equipment. Accordingly, Primus explained, Lingo cannot practice any of the '769 patent's claims.

RTI never substantively responded to Primus's explanation of the reasons why Lingo does not practice the RTI patents, instead positing that "there must be a switch" somewhere "in the Primus system." (Dowd Decl. Ex. F (Letter from Gerald J. Weinberger to John F. DePodesta (Apr. 26, 2007)).) Ultimately, RTI agreed to meet with Primus on August 13, 2007 ostensibly to explain its contentions. But at this meeting, RTI instead revealed it had conducted no investigation specific to the Lingo product, and was relying on what it called its "generic claim chart" for asserting the '085 claims against internet telephone service providers generally. This "generic claim chart" failed to compare any asserted claim to the actual Lingo product. Thus, for example, where the claims recite "a housing forming an enclosure" around the claimed device, RTI revealed its theory of infringement required the "housing" to "enclose" the entire internet. As to the '769 patent, RTI could explain no basis for any infringement contention. Primus offered to substantiate its explanation of Lingo by providing RTI with any additional information necessary to confirm the facts of its operation. RTI declined.

C.     RTI Has A Pattern Of Asserting These Patents In "Bad Faith"

RTI's actions in this case are consistent with a pattern of "bad faith" litigation against companies in the telecommunications industry. To Primus's knowledge, RTI's business since at least 1997 has been suing a succession of at least twenty other companies from disparate areas of the telecommunications industry. At least three other such cases remain pending, only one has

- 4 -

ever proceeded to a *Markman* hearing (which was thereafter dismissed by stipulation),[3] and

virtually all others were dismissed before any significant hearings, summary judgment, or trials

could occur. At least three cases were dismissed with prejudice on RTI's own motion.[4] The

dockets from these cases reveal a pattern of litigation conduct by RTI paralleling its conduct in

this case.

In *Open LCR.com*, for example, OpenLCR filed suit as a declaratory judgment plaintiff

alleging that RTI had engaged in a pattern of conduct strikingly similar to RTI's behavior toward

Primus in this case. As the Court described it:

> RTI, through Weinberger, sent at least eight demand letters and made over fifty
> telephone calls to OpenLCR in Colorado. Throughout an approximately six-
> month period, Weinberger refused any discussion regarding the validity of the
> RTI patents, apparently preferring to focus his efforts at intimidating OpenLCR
> with threats of litigation in order to convince OpenLCR that is was in their best
> interest to sign a license agreement. . . .Weinberger told OpenLCR that even if
> OpenLCR's technology did not infringe on the RTI Patents, "RTI still had a 20%
> chance of winning in court ... and that OpenLCR should simply make a business
> decision to enter a license agreement with RTI to avoid a costly litigation in New
> York."

112 F. Supp. 2d at 1227-28. (Dowd Decl. Ex. H.) Considering this set of facts, the Court found

that Open-LCR had made a "threshold showing of <u>bad faith</u> on evidence that RTI persisted with

threats of litigation while disregarding any possibility that Open-LCR's technology does not

infringe RTI's patents." 112 F. Supp. 2d at 1228 (emphasis supplied).

This is not a lone example. In *Alcatel Internetworking, Inc., et al. v. Rates Tech. Inc.*,

RTI was sanctioned for discovery abuse designed to drive up the cost of litigation. The court

ordered RTI on <u>five</u> different occasions to produce license and settlement agreements covering

the RTI patents, the last order imposing a $500 per day fine for failure to comply. (Dowd Decl.

---

[3]  *See* Dowd Decl. Ex. G (attaching *Mediacom Corp. v. Rates Tech. Inc.*, 4 F. Supp. 2d 17 (D. Mass. 1998) and Civil Docket for Case No. 1:97cv10559).
[4]  *Rates Tech. Inc. v. Cablevision Sys. Corp.*, Civil Action No. 2:05cv3583 (E.D.N.Y.); *Rates Tech. Inc. v. 3COM Corp.*, Civil Action No. 2:05cv5052 (E.D.N.Y.); *Rates Tech. Inc. v. VTech Commc'ns*, Civil Action No. 2:06cv3116 (E.D.N.Y.).

Ex. I (*Alcatel*, C.D. Cal. C.A. 2:03cv09449 (Dckt. No. 61, Nov. 4, 2004 Order Granting Plaintiff's Motion to Compel; Dckt. No. 82, Dec. 6, 2004 Order Granting Plaintiff's Ex Parte Application for An Order Compelling Compliance with Previous Court Order; Dckt. No. 93, Dec. 17, 2004 Order Overruling RTI's Objection to Court Order; Dckt. No. 276, Mar. 8, 2006 Order Granting Plaintiff's Motion to Compel; Dckt. No. 302, Apr. 21, 2006 Order Compelling Production (ordering RTI to pay $500 for each calendar day that complete responses to Plaintiff's discovery are not produced))).) The court ultimately ordered that RTI "already ha[s] wasted enough of the Court's time with [its] frivolous motions and may not file any other motions for reconsideration of this issue without leave of Court." (Dowd Decl. Ex. I (Dckt. No. 318, July 7, 2006 Order Denying RTI's Motion for Relief at 5).) Less than one week later, RTI stipulated to dismissal of its complaint with prejudice. (Dowd Decl. Ex. I (Dckt. No. 320, July 13, 2006 Stipulation for Dismissal).)

Likewise, in *Rates Tech. Inc. v. Cablevision Sys. Corp.*, Cablevision also sought discovery of licenses, settlement agreements, and covenants not to sue. *Rates Tech. Inc.*, E.D.N.Y. C.A. 2:05cv03583 (Dowd Decl. Ex. J (Dckt. No. 47, Apr. 14, 2006 Order Granting Defendant's Motion to Compel).) The court ordered RTI to produce the documents on three separate occasions. Rather than comply, RTI asked the court "to dismiss its claims with prejudice if that is the necessary alternative to being forced to produce confidential settlements to untrustworthy adverse counsel." The court ordered dismissal with prejudice and awarded fees to Cablevision. (Dowd Decl. Ex. J (Dckt. No. 114, Apr. 20, 2007 Order).)

**D.    RTI Failed to Reveal That The '085 Patent Was In Re-Examination**

Extraordinarily, all the while that RTI was threatening Primus with the '085 patent, RTI kept from Primus the fact that a request to re-examine the validity of the '085 claims had been filed in February 2006. The PTO instituted re-examination of the '085 claims on April 11, 2006,

and on May 21, 2007, the PTO sent RTI its first Office Action in the '085 re-examination

proceedings. (Dowd Decl. Ex. K.) The PTO informed RTI that all claims of the '085 (Claims 1-

26) are subject to reexamination, and that all of claims that RTI now asserts against Primus were

rejected as anticipated under 35 U.S.C. § 102(b) and obvious under § 103.[5] (Dowd Decl. Ex. K.)

As of the time of this motion, the status of RTI's '085 claims is that they remain rejected by the

PTO with no prospect of coming out of re-examination any time soon (if ever).[6]

RTI kept the events of this re-examination from Primus, and Primus only found out about

them on its own initiative after RTI had filed its complaint alleging willful infringement of both

the '085 and '769 patents on July 16, 2007.

## II.    ARGUMENT

A motion to dismiss "tests the legal sufficiency of the complaint." *Stratos Lightwave,*

*Inc. v. Picolight, Inc.*, 2005 WL 631308, at *1 (D. Del. Mar. 23, 2005). Dismissal pursuant to

Rule 12(b)(6) is proper where "it is clear that no relief could be granted under any set of facts

that could be proved consistent with allegations." *See Graves v. Lowery*, 117 F.3d 723, 726 (3d

Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (both citing *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957) (dismissal under 12(b)(6) is proper where "it appears beyond doubt that

the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief"));

*see also* Wright & Miller, 5B Fed. Prac. & Proc. Civ. 3d § 1357 (motion to dismiss under

12(b)(6) raises only an issue of law). Although the Court must accept as true all factual

allegations pled in the complaint, importantly, it need not accept as true unreasonable inferences

---

[5]    Only two claims, 6 and 17, directed to a substantially cylindrical housing, were deemed
patentable. It is undisputed that the Lingo ATA device does not have a "substantially cylindrical
housing."
[6]    RTI's response to the PTO rejection was to file declarations by Mr. Weinbeger attempting to
"swear behind" the prior art rejections. However, as a matter of law, it is not possible to "swear
behind" § 102(b) prior art. Thus, such declarations have no effect on the examiner's rejection.
37 C.F.R. § 1.131.

or conclusory legal allegations cast in the form of factual allegations. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Here, RTI's Complaint should be dismissed because: (1) RTI cannot rely on its concededly uninformed "belief" when Primus has provided RTI specific written notice of reasons why Primus's Lingo technology does not meet particular elements of the asserted patent claims; (2) faced with this knowledge, RTI's complaint fails to set forth any specific facts, or even rudimentary information, sufficient to provide a basis for believing RTI's patents are infringed, willfully or otherwise; and (3) perhaps most extraordinarily, RTI can have no meritorious infringement contentions at a time when the PTO has deemed its asserted '085 patent claims invalid and un-patentable.

## A.  Faced With Specific Reasons Why Lingo Does Not Practice The Asserted Claims, RTI May Not Rest On Uninformed "Belief"

RTI's claims should be dismissed because RTI was provided specific, concrete reasons why Lingo does not infringe the RTI patents, but failed to make any investigation of Lingo sufficient to support a belief to the contrary. As noted above, RTI has litigated these patents before, and certain terms of the asserted claims have been construed against RTI in the past. These constructions are binding on RTI. *See, e.g., TM Patents, L.P. v. Int'l Bus. Mach., Corp.,* 72 F. Supp. 2d 370, 378-79 (S.D.N.Y. 1999) (finding that plaintiff was bound by the claim construction in a prior case where plaintiff asserted the same patent); *Edberg v. CPI—The Alternative Supplier, Inc.,* 156 F. Supp. 2d 190, 196 (D. Conn. 2001). Against this history, where RTI has been informed of specific reasons why Lingo does not practice these claim elements, RTI must plead more than an uninformed "belief" to survive a motion to dismiss.

RLF1-3202486-1

### 1.    *RTI Pled No Good-Faith Basis To Believe The '085 Claims Are Infringed*

The limitations of the '085 patent were construed against RTI in *MediaCom Corp. v. Rates Tech. Inc.*, 34 F. Supp. 2d 76 (D. Mass. 1998), where the Court construed the "switch means . . . for disconnecting" element to "require the interruption – the breaking or opening – of the electrical circuit between the telephone jack and the network." *Id.* at 81. RTI is estopped from challenging this interpretation of the "switch means" limitation. *TM Patents*, 72 F. Supp. 2d at 378-79.

Prior to RTI's filing its complaint, Primus informed RTI that, in the Lingo system, there is no connection between any Primus equipment and any subscriber telephone except through an ATA device. (Dowd Decl. Ex. E.) Moreover, Primus informed RTI that no Lingo ATA device has a switch capable of opening and closing an electrical circuit between the telephone jack and the network. (*Id.*) When RTI learned these specific facts about Lingo, RTI was obligated to investigate Lingo's operation before alleging that Lingo practices the '085 claims. Indeed, it was incumbent upon RTI to develop sufficient facts about Lingo in order to form at least a reasonable belief that Lingo met the "switch means" limitation before filing suit. RTI did not do so, and its complaint makes no such factual allegations. Instead, RTI claims without basis that it "believes" its allegations may be "likely to have evidentiary support" at some point in the future. Such unsubstantiated, conclusory assertions are legally insufficient in the face of specific, contrary facts known to RTI before filing suit. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Merck & Co. v. Apotex, Inc.*, 488 F. Supp. 2d 418, 428 n.7 (D. Del. 2007) ("Although the Rule 12(b)(6) standard requires the court to accept all well-pleaded allegations as true, . . . the court will not credit bald and conclusory allegations.") (citing *United States v. Vespe*, 868 F.2d 1328, 1340 (3d Cir. 1989)).

Similarly, prior to RTI's filing its complaint, Primus explained to RTI that Lingo does not have a "device" with a "housing" containing a "first jack means" for connecting with the "first telephone." Even though RTI had actual knowledge Lingo lacks the claimed "housing," the complaint fails to plead any fact about Lingo that could form a good faith basis to believe that RTI could ever prove this claim element. Under these circumstances, RTI's complaint fails as a matter of law. *See Emery v. United States*, 920 F. Supp. 788, 790 (W.D. Mich. 1996) (noting Courts "need not ... accept unwarranted factual inferences" in considering a Rule 12(b)(6) motion); *Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D. Fla. 1993) (granting motion and noting that "[c]onclusory allegations and unwarranted deductions of fact ... are not accepted as true").

### 2. *RTI Pled No Good-Faith Basis To Believe The '769 Claims Are Infringed*

If possible, RTI's allegations with respect to the '769 patent have less support. The '769 patent claims a "method for updating a database that stores billing rate parameters" for the device of the '085 patent by, among other things, "connecting at a predetermined time and date" the "call rating device to a rate provider having billing rate parameters . . . ." (*E.g.*, Dowd Decl. Ex. B ('769 patent, claim 1).) During prosecution of the '769 claims, to overcome a § 102(b) rejection, RTI told the PTO that its claims were patentable because "updating of the rate memory is accomplished automatically, that is, without participation by the telephone user or owner, when the system operator determines that updating is required." (Dowd Decl. Ex. L ('769 File History, Amend. dated Oct. 27, 1994 at 2).) Indeed, RTI told the PTO that the '769 claims were patentably distinct because, in the prior art: "[T]here is simply no capability for automatic period memory updating as all programming of the rate information must be conducted by the user, who decides when and what to program." (*Id.* at 4.) These arguments for patentability bar RTI from now seeking to stretch the '796 claims to cover systems requiring manual updating of rate

information. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 735-37 (2002) (holding that estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope: "a patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter").

As early as April 2007, Primus informed RTI that Lingo has no capability for "updating a database that stores billing rate parameters" by "connecting at a predetermined time and date" the "call rating device to a rate provider having billing rate parameters . . . ." (Dowd Decl. Ex. E (Letter from DePodesta to Weinberger (Apr. 23, 2007)).) Rather than investigate Lingo, RTI's only response to this specific reason why Lingo does not infringe has been: "we don't believe you – there's no way Lingo's technology can operate without infringing RTI's patents." (Dowd Decl. Ex. M (E-mail from Weinberger to DePodesta (Aug. 23, 2007)).) This "it must be so" approach, in the face of specific contrary fact, reappears in RTI's complaint – where RTI makes no more specific allegation than that it believes it may "likely have evidentiary support" for its claims some time in the future.

Where, as here, RTI has been provided the factual reasons why the accused Lingo product lacks specific elements of its patent claims, Rule 12(b)(6) requires more than an allegation that RTI "believes" evidentiary support is "likely" to come later. It requires RTI to have made an investigation sufficient to form a belief as to the truth of its allegations before subjecting this Court and Primus to the burden and expense of litigation. *See Emery*, 920 F. Supp. at 790 (the court "need not . . . accept unwarranted factual inferences"); *Gersten*, 833 F. Supp. at 910 ("Conclusory allegations and unwarranted deductions of fact . . . are not accepted as true."). RTI's attempt to skip this step is an abuse of the legal system. RTI's complaint should be dismissed.

- 11 -

### 3.    *RTI Had Every Reason To Know the Facts of Lingo*

Importantly, this is not a case where RTI lacked access to the facts of Lingo in advance of filing. Quite the opposite is the case here. Primus explained the facts of Lingo to RTI before RTI filed suit. What is more, Primus offered to make available to RTI any aspect of Lingo it needed to see in order to confirm that Lingo does not infringe. RTI simply failed to take Primus up on that offer prior to filing suit.

### B.    No Asserted '085 Claim Presently Exists For Adjudication

RTI's complaint should be dismissed for the second, extraordinary reason that it is based on a patent whose asserted claims stand presently rejected by the PTO as invalid. On May 21, 2007, the PTO rejected the asserted '085 patent claims as invalid under 35 U.S.C. §§ 102(b) and 103.[7] (Dowd Decl. Ex. K ('085 Re-Exam File History, Office Action dated May 21, 2007 at 7, 19, 23-24 (rejecting '085 claims 1-5, 7-16, and 18-26)).) Under 35 U.S.C. § 271(a), a claim of patent infringement can only exist when the alleged infringer "without authority makes, uses, offers to sell, or sells any <u>patented</u> invention . . ." 35 U.S.C. § 271(a) (emphasis supplied). Because the PTO has rejected as un-patentable the asserted '085 claims, there presently exists no valid and enforceable claim that RTI can assert against Primus's Lingo product. Indeed, it is an open question whether any asserted '085 claims will ever survive re-examination at all, much less survive re-examination without significant modifications to the limitations the claims recite.

This Court, and Primus, should not be put to the substantial burden and expense of adjudicating patent claims that the United States government has already found to be invalid and that may never survive re-examination. Even if some form of the asserted claims were

---

[7]    Only two dependent claims, claims 6 and 17, were not rejected on this basis. Both claims required a "housing" that is "substantially cylindrical." It is undisputed that no Lingo component is "substantially cylindrical."

ultimately to survive the re-examination process, and there is no reason to believe any will,[8] it would be a waste of judicial resources (in the extreme) to put the Court (and Primus) through pleadings, interrogatory responses, discovery of the inventors, expert reports on claim construction, and a *Markman* hearing on patent claims that presently stand rejected. If not dismissal of the complaint, the better course is to wait and see if any claim survives re-examination. Only then, if one does, would it be possible to assess whether this case is in a proper posture for adjudication. *See Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006) (staying proceedings pending re-examination, finding that "[a] stay, therefore, will conserve the resources of the parties and the court, thereby promoting efficiency"); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.C. 99-374 GMS, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) (staying proceedings pending re-examination, noting "'the grant of a stay will maximize the likelihood that neither the Court [] nor the parties expend their assets addressing invalid claims'") (quoting *Softview Computer Prods. Corp., et al. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000).

### C.     At a Minimum, This Case Should Be Stayed Pending Resolution of the PTO's Re-Examination Proceedings

At a minimum, this Court should grant a stay of RTI's action pending the outcome of the reexamination. *See Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967) (noting the court's inherent power to stay an action in the interests of efficient and fair resolution of the disputed issues). Courts frequently stay patent litigation pending the conclusion of a PTO re-examination. *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 216 (D. Del. 1991) (citing

---

[8]   As noted above, RTI's response to the PTO rejection was to file declarations by Mr. Weinbeger attempting to "swear behind" the prior art rejections. Because it is not possible to "swear behind" § 102(b) prior art as a matter of law, 37 C.F.R. § 1.131, these declarations have no effect on the examiner's rejection.

RLF1-3202486-1

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425-26 (Fed. Cir. 1988) ("In a patent proceeding, courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.")). When considering whether to grant a stay, "a district court must evaluate the possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *Nutrasweet*, 766 F. Supp. at 217 (quoting *United Merchants & Mfrs., Inc. v. Henderson*, 495 F. Supp. 444, 447 (N.D. Ill. 1980)). In particular, courts consider whether: (1) a stay would unduly prejudice the plaintiff or present a tactical advantage for the defendant; (2) a stay will simplify the issues; and (3) discovery is complete and whether a trial date has been set. *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2006 WL 2375035, at *6; *Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340, at *1.

Each of these factors supports granting a stay in this case. First, RTI does not appear to make or sell any products that practices the patents-in-suit. Nor does RTI compete against Primus in the internet telephony market. As such, any harm to RTI could be fully compensated by monetary damages. *See Gioello*, 2001 WL 125340, at *2. Thus, no undue prejudice to RTI or tactical advantage to Primus would flow from a stay. Second, it is certain that a stay will simplify the issues in many respects. If the '085 patent is declared invalid, the issues, defenses, and evidence in the case will clearly be simplified.[9] *See id.* at *1. Likewise, if the PTO requires amendment to the '085 claims, the Court (and Primus) will have avoided expending resources litigating on claims that no longer exist. And even if the PTO ultimately allowed some claims, the Court and the parties will benefit from more clearly defined issues and a streamlined discovery process. The Court would also avoid the risk of inconsistent rulings or the issuance of

---

[9] Although the '769 patent is presently not in re-examination, the accused products and relevant facts are the same as at issue for the '085 patent. Staying the entire action therefore will conserve party and judicial resources and ensure that the case proceeds efficiently.

advisory opinions.   In short, a stay will undoubtedly simplify the issues in this case.   *See*

*Dexcom*, 2006 WL 2375035, at \*6.  *Id*  Third, discovery has not yet begun, and no trial date has

been set.  A stay would therefore not affect any existing schedule or imminent trial date.  *Id*.

## III.   CONCLUSION

For the foregoing reasons, RTI's action should be dismissed, or at a minimum, stayed,

pending the outcome of re-examination.

_[signature]_

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Of Counsel:

James L. Quarles, III
James M. Dowd
WILMER CUTLER PICKERING
    HALE and DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6236

*Attorneys for Primus Telecommunications, Inc.*
*and Primus Telecommunications Group Inc.*

Dated:  September 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2007, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

### BY HAND

Mary Matterer
Morris James LLP
500 Delaware Avenue, Suite 1500
P. O. Box 2306
Wilmington, DE   19899-2306


_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

RLF1-3202331-1