IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                    X
RATES TECHNOLOGY INC.,              :
                                    :
            Plaintiff,              :
    v.                              :
                                    :   Civil Action No. 07-441 JJF
PRIMUS TELECOMMUNICATIONS, INC., et al.,:
                                    :
            Defendants.             :
_____X

**OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR STAY COMPLAINT**

Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

*OF COUNSEL*:
James B. Hicks
Hicks | Park LLP
824 Wilshire Blvd., Suite 300
Los Angeles, California 90017
Tel.: (213) 612-0007
jhicks@hicksparklaw.com

Dated: September 28, 2007.

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. RTI HAS ALLEGED VALID PATENT INFRINGEMENT CLAIMS
AGAINST PRIMUS, AND PRIMUS' ACCUSATIONS AGAINST RTI
ALL LACK MERIT .......................................................................................................3

    A. RTI Has Never Sued Anybody in Bad Faith ......................................................4

    B. RTI Has Valid Patent Infringement Claims Against Primus ..............................8

    C. Primus Has Completely Mischaracterized The Re-Examination Process ..........11

III. PRIMUS' MOTION TO DISMISS THIS LAWSUIT SHOULD BE DENIED ...........13

IV. PRIMUS' MOTION TO STAY THIS LAWSUIT SHOULD
ALSO BE DENIED .....................................................................................................14

V. CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alltech v. Cenzone,*
    2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007) .................................................. 13, 14

*Aro v. Convertible Top Rep. Co.,*
    377 U.S. 476 (1964) ..................................................................................................... 10

*Arrival Star v. Descartes Sys. Group,*
    2004 WL 2496622, at p. 4 (S.D.N.Y. 2004) ............................................................... 14

*Atasi Corp. v. Seagate Technology, Inc.,*
    847 F.2d 826 (Fed. Cir. 1988) ....................................................................................... 7

*Bell Atlantic Corp. v. Tombley,*
    127 S.Ct. 1955 (2007) .................................................................................................... 4

*Cambridge v. Penn Nutrients,*
    962 F.2d 1048 (Fed. Cir. 1992) ................................................................................... 14

*Cognex v. National,*
    2001 U.S. Dist. LEXIS 25555 (Del. 2001) ........................................................ passim

*Dawson Chemical Co. v. Rohm & Haas Co.,*
    448 U.S. 176 (1980) ..................................................................................................... 10

*D-Link Systems, Inc. v. Rates Technology Inc.,*
    C.D. Cal. Case No. SA CV 07-144 .............................................................................. 7

*FMC v. Up-Right, Inc.,*
    816 F.Supp. 1455 (N.D. Cal. 1993) ............................................................................ 10

*Glenayre v. Jackson,*
    443 F.3d 851 (Fed. Cir. 2006) ..................................................................................... 10

*Goodyear v. Chiles Power Supply, Inc.,*0
    332 F.3d 976 (6th Cir. 2003) ......................................................................................... 7

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ....................................................................................................... 3

*Hoffman-La Roche Inc. v. Invamed Inc.,*
    213 F.3d 1359 (Fed. Cir. 2000) ................................................................................... 14

*Internetworking, Inc. v. Rates Technology Inc.,*
    C.D. Cal. Case No. CV 03-9449 ................................................................................... 5

*Iqbal v. Hasty,*
    490 F.3d 143 (2d. Cir. 2007) ......................................................................................... 4

*Lunney v. United States,*
    319 F.3d 550 (2d Cir. 2003) .................................................................................. 3, 13

*OpenLCR.com, Inc. v. Rates Technology Inc.*,
   112 F.Supp.2d 1223 (D. Colo. 2000) ............................................................................. 5

*Rates Technology Inc. v. Cablevision Systems Corp.*,
   E.D.N.Y. Case No. CV 05-3583 ................................................................................... 6

*Rude v. Westcott*,
   130 U.S. 152 (1888) ..................................................................................................... 7

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ............................................................................................... 3, 13

*Semiconductor Energy v. Chi Mei*,
   2007 U.S. Dist. LEXIS 44288 (N.D. Cal. 2007) ......................................................... 10

*Sony Corp. v. Universal Studios, Inc.*,
   464 U.S. 417 (1984) ................................................................................................... 10

*Trustmark Ins. Co. v. ESLU, Inc.*,
   299 F.3d 1265 (11th Cir. 2002) .................................................................................. 14

**Statutes and Other Authorities**

35 U.S.C. §102 ................................................................................................................ 12, 14

35 U.S.C. §103 ....................................................................................................................... 12

35 U.S.C. §271(c) .................................................................................................................. 10

35 U.S.C. §282 ................................................................................................................ 11, 13

Fed.R.Civ.P. 26(b)) ................................................................................................................. 7

Fed.R.Civ.P. Form 16 ............................................................................................................. 4

Despite the heated tone of Primus' motions, RTI properly alleges that Primus infringes its patents, and that it gave Primus notice of infringement; but when Primus refused to stop infringing, RTI had no choice but to sue it. Complaint ¶¶7-21. These allegations are accepted as true on a 12(b)(6) motion, and although Primus says RTI's '085 patent was "rejected" in a re-examination proceeding, that mischaracterizes the consequences of a preliminary rejection, as shown below. In fact, Primus' accusations all lack merit, since there's no evidence that RTI ever sued Primus or anybody else in bad faith, and Primus hasn't shown a defense to RTI's suit. RTI's infringement claims are perfectly valid, and over 140 companies in the VoIP field -- including traditional telephone companies, ITSP's (VoIP companies), cable voice companies, mobile voice messengering (Internet) companies, and VoIP system components manufacturers -- are covered under these patents owned by RTI. See Hicks Decl. ¶¶2-5; Epstein Decl. ¶¶2-27.

The bottom line is there's no reason to stay or dismiss this case, especially since RTI's '769 patent isn't subject to re-examination, so the pending '085 proceeding would not determine all the issues in this case. See Cognex v. National, 2001 U.S. Dist. LEXIS 25555 (Del. 2001).

I.   INTRODUCTION

RTI is a well-respected technology company in the telephony field that is responsible for several major inventions relating to methods and apparatus for automatically routing phone calls based on cost which are the foundation of modern telephone systems, such as the Internet-based switched telephone systems using Voice over Internet Protocol ("VoIP") technology that have recently dominated the telephone industry.

RTI holds patents covering those inventions, and has successfully covered many of the prominent telephone service providers, including Internet telephone service providers ("ITSP's") under those patents. Primus is one such ITSP which provides VoIP telephone services through a

system called "Lingo."

RTI is recognized in the telephone industry as a technology innovator and for dealing fairly and honorably with companies that use its technology. Prior to instituting litigation, RTI routinely gives notice to companies that it believes are infringing its patents, and tries to settle its infringement claims on a fair basis. In most cases, the claims are settled and litigation is not required. However, sometimes that is not possible and, as in this case, litigation is necessary.

Both of the RTI patents in involved in this litigation have been previously involved in re-examination proceedings -- and in each case, the validity of each claim has been confirmed by the United States Patent & Trademark Office (the "PTO"). They have also been involved in a number of lawsuits, and they have never been found invalid or unenforceable. There is simply no reason that they cannot be asserted in this case against Primus.

Primus' instant Rule 12(b)(6) motion requires the Court to accept the factual allegations of RTI's complaint as true, to determine whether it states a cause of action upon which relief can be granted. To properly plead a claim for patent infringement, all that is required is that the plaintiff allege it is the owner of a patent, and that the defendant has committed one or more acts which infringe one or more the claims of that patent. RTI has clearly done that in its complaint against Primus. Primus' outrageous and unsupported accusations about RTI's conduct in other lawsuits, and its mischaracterization of the status of the claims of the '085 patent in the current re-examination proceeding are entirely irrelevant -- and in addition, have no merit at all.

RTI understands that no party wants to be a defendant in a patent infringement suit that could potentially put them out of business and that Primus is no exception. However, RTI is entitled to protect its rights and enforce its patents against companies that use its patented technology without paying for the privilege. RTI cannot permit Primus' wild and inaccurate

2

accusations against RTI to go unanswered, because they have been made in this public forum and RTI's integrity and reputation have been challenged, even though the those accusations are irrelevant to the issues here, which are only whether the complaint properly states a cause of action, and whether this action should be stayed.

As explained below, Primus' motions should be denied, since RTI's infringement claims are perfectly valid, and there's no reason to stay or dismiss this case – and especially since RTI's '769 patent isn't subject to re-examination, so the pending '085 proceeding would not determine all the issues in this case. *See Cognex v. National*, 2001 U.S. Dist. LEXIS 25555 (Del. 2001).

## II. RTI HAS ALLEGED VALID PATENT INFRINGEMENT CLAIMS AGAINST PRIMUS, AND PRIMUS' ACCUSATIONS AGAINST RTI ALL LACK MERIT

This case arises out of Primus' infringement of RTI's '085 and '769 patents, including through Primus' Lingo services allowing phone calls to be made over the internet. RTI's '085 patent "relat[es] to the routing of telephone calls based upon cost," and the '769 patent "relat[es] to a method for updating a database in a telephone call routing system." Complaint ¶¶7, 15. Primus infringes the patents through "its Lingo VoIP services ... and products and equipment to support such services ..., in order to offer traditional voice telephony services across its VoIP platform and to enhance end user customers' voice and data networking ability." *Id.* at ¶¶9, 17. RTI gave Primus notice of infringement, and when Primus refused to stop its infringing activities, RTI had no choice but to sue it for patent infringement. *Id.* at ¶¶13, 21.

That should be the end of the matter, since a court accepts all fact allegations as true on a Rule 12(b)(6) motion even if "a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *Accord, Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). Here, RTI's complaint is based on the approved federal model form patent infringement complaint – *see* Fed.R.Civ.P.

Form 16 ("Complaint for Patent Infringement") – and the Supreme Court recently approved the use of such forms. *Bell Atlantic Corp. v. Tombley*, 127 S.Ct. 1955, 1971 n.10 (2007). *Accord, Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007). Thus, there's simply no basis for Primus' Rule 12(b)(6) dismissal motion, and since RTI's '769 patent isn't the subject of a re-examination proceeding, there's no basis for a stay either. *See Cognex, supra*, 2001 U.S. Dist. LEXIS 25555 (denying motion to stay patent infringement lawsuit pending a re-examination proceeding, in part because the re-ex would not determine all the issues in the case).

Primus ignores these basic procedural rules, and makes all sorts of outrageous accusations against RTI in an attempt to prejudice the Court and get this case dismissed or stayed without any real basis. But as detailed below, there's nothing wrong with RTI having settled cases in the past, and Primus has no evidence at all that RTI has ever sued anybody in bad faith. Moreover, Primus has never shown any real defense to RTI's infringement claims, either prior to this motion or in its moving papers, and in fact RTI has valid patent infringement claims against Primus. Finally, Primus completely mischaracterizes the consequences of a re-examination proceeding's first office action with a preliminary rejection, in order to make a bogus argument that RTI's '085 patent has somehow been rejected as a matter of law, when that's not true at all.

The bottom line is that Primus is merely doing what almost every defendant does – *i.e.*, deny all liability – and it wants the Court to take its word for it. That's no basis for dismissing or staying a lawsuit, and so Primus' motion should be denied for each of the following reasons:

A. <u>RTI Has Never Sued Anybody In Bad Faith:</u>

Primus says that RTI has sued other companies in the telecommunications industry for patent infringement, and that none of these cases has ever gone to trial. Motion at pp. 4-5. But Primus cites no evidence that any of those other lawsuits were brought in bad faith, or that RTI

4

did anything other than settle those cases after filing suit – which is what most federal judges want parties to accomplish.

Primus cites three cases as supposedly showing RTI's bad faith, but none of them supports Primus' bad faith claims:

Primus first cites *OpenLCR.com, Inc. v. Rates Technology Inc.*, 112 F.Supp.2d 1223 (D. Colo. 2000), which denied a motion by RTI to dismiss a declaratory judgment and business tort lawsuit. *See* Dowd Decl., Exh. "H". But the *OpenLCR.com* court merely relied on the plaintiff OpenLCR.com's declarations and complaint's allegations to see if there was any evidence to support personal jurisdiction over RTI in Colorado, and it did not make any factual findings or conclusions that RTI had acted in bad faith. *E.g.*, 112 F.Supp.2d at 1226 ("According to allegations in the Amended Complaint"); *id.* at 1228 ("According to the affidavit of [the] director of business development at OpenLCR"). Although Primus cites this case as supposedly showing that RTI acted in bad faith, there's no such finding in the *OpenLCR.com* case.

Primus next cites *Alcatel Internetworking, Inc. v. Rates Technology Inc.*, C.D. Cal. Case No. CV 03-9449, for the proposition that RTI was sanctioned for refusing to provide discovery. *See* Dowd Decl., Exh. "I". But all the 2004 discovery orders related to jurisdictional discovery with which RTI complied (*id.*), and it wasn't until 2006 that the discovery magistrate imposed a daily fine in order to get RTI to produce further responses to <u>different</u> discovery requests. *See id.* (Order dated April 21, 2006). What Primus fails to tell the Court is that in 2006 Alcatel was merging with Lucent, which was covered under these same patents under a settlement agreement with RTI, so RTI had waived its claims against Alcatel pursuant to that prior settlement agreement, and didn't want to produce additional discovery while its dismissal of claims was pending. *Id.* at p. 2. The discovery magistrate ruled that he did not have authority to modify

5

discovery dates while RTI's dismissal was pending, and basically ordered the daily fine if the case wasn't eventually dismissed. *Id.* at pp. 2-3. In fact the case was dismissed soon thereafter pursuant to the relevant settlement agreements, and no sanctions were ever imposed or paid by RTI. *See generally* Hicks Decl. ¶3.

Primus finally cites *Rates Technology Inc. v. Cablevision Systems Corp.*, E.D.N.Y. Case No. CV 05-3583, as another case in which RTI supposedly failed to respond to proper discovery. *See* Dowd Decl., Exh. "J". But that case involved an order directing RTI to produce settlement agreements from other lawsuits so that defendant Cablevision could use them to calculate RTI's damages in the *Cablevision* lawsuit. RTI was reluctant to produce its settlement agreements to Cablevision, even with an attorneys-eyes-only designation, since it was Cablevision's <u>lawyers</u> who had already repeatedly filed settlement communications and attorneys-eyes-only discovery responses in open court, effectively revealing such confidential matters to the world through the federal courts' PACER system. Although the *Cablevision* court repeatedly struck each of these filings by Cablevision's lawyers, it took no action to prevent future filings of confidential information; and when RTI asked the court to put some teeth in the protective order in the case (such as requiring a bond, or allowing RTI to sue for damages in the event of disclosure of confidential information), the *Cablevision* court refused to do so. *See generally* Hicks Decl. ¶4.

RTI was also reluctant to produce its settlements because such discovery was out-and-out improper – indeed, the magistrate judge in a parallel RTI patent case recently denied a similar motion to compel production of these very same agreements, given "the proscription of Fed.R. Evid. 408 against the admissibility of settlement agreements to prove the value of a claim":

> "[T]he Court fails to see how facts and documents relating to covenant-not-to-sue agreements entered into by RTI in compromise of claims for past infringement or threatened suit for past infringement qualify as relevant to the claims or defenses of the parties hereto or reasonably calculated to lead to the discoverability of admissible

6

evidence (which is the current standard for discoverability under Fed.R.Civ.P. 26(b)). Accordingly, RTI's relevance objection to the discoverability of such facts and documents is sustained, and [the] motion to compel the discovery of such facts and documents is DENIED."

*D-Link Systems, Inc. v. Rates Technology Inc.*, C.D. Cal. Case No. SA CV 07-144 (Order dated July 11, 2007, at p. 3). Indeed, "a payment . . . in settlement of a claim for an alleged infringement <u>cannot</u> be taken as a standard to measure . . . damages." *Id*. at p. 2 (emphasis added), citing *Rude v. Westcott*, 130 U.S. 152, 164 (1888). *See also Goodyear v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) (noting the "strong public interest in favor of secrecy of settlement matters," since "[t]he ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system"; and when this secrecy is violated, "the entire [settlement] negotiation process collapses upon itself, and the judicial efficiency it fosters is lost"). *See generally* Hicks Decl. ¶5.

Thus, RTI took the position in the *Cablevision* case that it would be willing to produce the settlement agreements if the court required Cablevision to post a bond against improper disclosure, etc., but otherwise RTI was willing to let the case be dismissed and take its chances on appeal, since "a payment . . . in settlement of a claim for an alleged infringement cannot be taken as a standard to measure . . . damages." *D-Link, supra*, at p. 3. As Primus notes, the court dismissed RTI's claims, but RTI has reserved its right to appeal the order to the Federal Circuit. Hicks Decl. ¶6. RTI believes it acted properly, since it was reluctant to produce its settlement agreements to lawyers who had previously openly filed other attorneys-eyes-only discovery responses. *See Atasi Corp. v. Seagate Technology, Inc.*, 847 F.2d 826, 829 (Fed. Cir. 1988) (not requiring a party to produce confidential information, in view of the risk of unauthorized disclosure). Certainly, there's no basis for Primus to accuse RTI of "bad faith."

7

In other words, Primus' bad faith accusations ring hollow. They are merely an attempt to screen the fact that Primus has no valid basis for defending against RTI's infringement claims in this lawsuit – as shown in the following section.

B. RTI Has Valid Patent Infringement Claims Against Primus:

Primus' argument that RTI has no basis for suing it is little more than a request for the Court to accept its representations that it doesn't infringe RTI's patents. But "[n]o testimonial or documentary technical information has ever been provided by Primus to RTI, or is now provided by Primus to this Court, to substantiate Primus' defense of non-infringement. Clearly, just because a defendant in a patent infringement suit says it does not infringe (which virtually all defendants in patent infringement lawsuits do) a plaintiff is not obligated to take their unsubstantiated word for it and refrain from pursuing its infringement claim. Likewise, a court should not take a defendant's unsubstantiated denial of a claim and on that basis dismiss a complaint in an infringement lawsuit." Epstein Decl. ¶23.

In fact, RTI has valid infringement claims against Primus. Basically, "Primus operates a VoIP telephone service called Lingo and supplies to subscribers of the Lingo VoIP telephone service certain devices, called Analogy Telephone Adapters (ATA's), that are configured especially for use in the Lingo VoIP telephone system." *Id.* at ¶19. RTI alleges that "the Lingo VoIP system directly infringes the claims of the '085 patent and the '769 patent and further that the Primus ATA's specifically configured for use with the Lingo VoIP telephone system contributorily infringe the claims of the'085 patent." *Id.* at ¶20. "ATA's are devices that are connected between the telephone of the user and the telephone system of the VoIP service provider. Generally speaking, the function of an ATA is to receive analog signals from the calling telephone and to convert those signals into digital signals that are transferred to and used

8

by the VoIP telephone system, which routes the call to its destination and maintains the connection between the calling telephone and the called telephone for the duration of the call. As part of that function, the ATA provides current to power the calling telephone. In order for the ATA to communication with the service provider's VoIP telephone system, a communications protocol understood by the ATA and by the VoIP telephone system is required." *Id.* at ¶21.

RTI believes that "the Primus ATA's are made for use exclusively with the Lingo VoIP telephone system because they utilize a communications protocol that is unique to the Lingo VoIP telephone system. Because of that, Primus' ATA's configured to use the Lingo communications protocol cannot be used with any other telephone system." *Id.* Although Primus argues that RTI acted in bad faith by pursuing this lawsuit because Primus told RTI that it does not infringe the claims of the RTI patents, Primus merely "asserts that its ATA's <u>themselves</u> do not have many of the elements of the claims of the '085 patent and that the Lingo VoIP telephone system does not have a database that is automatically updated, a requirement of the claims of the '769 patent. *Id.* at ¶22.

But as explained by RTI's long-time patent counsel, "Primus' non-infringement defenses are totally without merit," since "contributory infringement of the claims of the '085 patent by the ATA's made by Primus for use with the Lingo VoiP telephone system, . . . does not require that the product in question (here the Primus ATA) itself meet each element of the claims." *Id.* at ¶23. Contributory infringement is defined by statute:

> "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

9

35 U.S.C. §271(c). Thus, a finding of contributory infringement requires only that the infringer sell a component of an infringing system that is not suitable for substantial non-infringing use. *Dawson Chemical Co. v. Rohm & Haas Co.,* 448 U.S. 176, 198 (1980); *Sony Corp. v. Universal Studios, Inc.,* 464 U.S. 417, 441 (1984). A contributory infringer is liable to the same extent as a direct infringer. *Aro v. Convertible Top Rep. Co.,* 377 U.S. 476 (1964); *Glenayre v. Jackson,* 443 F.3d 851, 859 (Fed. Cir. 2006); *Semiconductor Energy v. Chi Mei,* 2007 U.S. Dist. LEXIS 44288 (N.D. Cal. 2007); *FMC v. Up-Right, Inc.,* 816 F.Supp. 1455, 1461 (N.D. Cal. 1993) ("A contributory infringer, like any joint tortfeasor, is responsible for the full extent of the harm suffered by the plaintiff. Like any other tortfeasor, defendants are liable not only for the portion of the harm they caused, but also the portion of the harm caused by the direct infringer.").

Accordingly, "even if all of Primus' assertions about what its ATA's do not have are true, the sale of the Primus ATAs specifically configured for use in the Lingo VoIP telephone system still contributorily infringes the '085 patent claims if the Lingo VoIP system directly infringes the claims." Epstein Decl. ¶24.

Moreover, "VoIP telephone systems rapidly make call routing decisions for each of the many telephone calls they handle based upon a variety of cost related factors. That is accomplished by storing the cost related information in a database. When a call is dialed, the database is assessed to determine cost related information for possible routes for the call. The costs are then compared and a route for each call is selected." *Id.* at ¶25.

"In order for the system to route calls efficiently, it is necessary that the database that stores the cost related information have current cost information stored in it. Accordingly, every VoIP system that RTI knows of automatically updates the database on a periodic basis because there is a great deal of cost related information that goes into routing the high volume of calls handled by the VoIP system and that cost information is changing constantly." *Id.* On that basis, RTI believes that "it is virtually impossible that any VoIP telephone system could operate in the real world without a system for automatically updating the cost related information in its routing databases on a period basis." *Id.* at ¶26.

10

In view of the above, Primus' allegation that RTI has acted in bad faith in pursuing its infringement claims because Primus has asserted wholly unsupported (and in fact, unbelievable) defenses of non-infringement is totally without merit. *See id.* at ¶27.

C. <u>Primus Has Completely Mischaracterized The Re-Examination Process</u>:

Primus finally argues that RTI should not be allowed to pursue this lawsuit because several of the claims in its '085 patent have supposedly been "rejected" by the PTO. That's just nonsense.

First of all, RTI's complaint alleges infringement of the '769 patent as well (Complaint ¶¶15-21), and that patent is not under re-examination at all. Epstein Decl. ¶6. Indeed, although the '769 patent underwent re-examination in 1999, that re-examination led to the confirmation of all of the claims of that patent. *Id.* at ¶5. Under these circumstances, there's no reason to dismiss or stay this lawsuit, since the pending '085 patent re-examination proceeding will not determine all the issues in this case. *Cognex, supra,* 2001 U.S. Dist. LEXIS 25555.

Even with regard to the '085 patent, each claim of an issued patent is presumed valid under the Patent Act, and it is Primus' burden to establish invalidity:

> "A patent shall be presumed valid. Each claim of a patent . . . shall be presumed valid independently of the validity of other claims. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

35 U.S.C. §282. Thus, although "most re-examinations involve at least the issuance of a first Office Action with a preliminary rejection of claims based upon the prior art patents or publications presented by the requester, . . . the issuance of an Office Action with a preliminary rejection is by no means a determination that the rejected claims are invalid or unenforceable." Epstein Decl. ¶12. This is shown by the fact that the '085 patent underwent a prior re-examination, which led to the confirmation of all of the claims of that patent. *Id.* at ¶5.

Given the above, Primus mischaracterizes the status of the current re-examination of the claims of the '085 patent. As a general matter, "[a] request for re-examination is not granted

11

unless the PTO believes that the requestor has raised a prima facie new issue relating to patentability," and so "most re-examinations involve at least . . . a preliminary rejection of claims based upon the prior art patents or publications presented by the requester." *Id.* at ¶12. However, "[o]nce the first Office Action with a preliminary rejection is issued in a re-examination, the patent owner has an opportunity to present arguments as to why the claims are not rendered unpatentable by the prior art cited by the requestor and/or, under certain circumstances, why the cited prior art is not applicable because of an earlier date of invention of the patented invention." *Id.* at ¶13.

In the present '085 re-examination, there has been a first Office Action with a preliminary rejection of claims 1-5, 7-16 and 18-26 of the '085 patent, and a confirmation of the patentability of claims 6 and 17. *See* Dowd Decl., Exh. "K". But Primus fails to advise the Court that RTI filed a response to the preliminary rejection set forth in the first Office Action. Epstein Decl., Exh. "1". A review of RTI's response, publicly available on the PTO website, shows that RTI has advanced significant arguments on the merits with regard to each reference cited by the Examiner as a basis for rejection of claims under 35 U.S.C. §102 of the Patent Act (anticipation), as well as the declarations of the inventors to demonstrate an earlier date of invention of the patented invention than the dates of the references cited as a basis of rejection of claims under 35 U.S.C. §103 of the Patent Act (obviousness). *See generally* Epstein Decl. ¶¶14-15.

RTI therefore has good grounds to believe that the patentability of all of the claims of the '085 patent will be confirmed by the PTO in the pending re-examination procedure, just as they were in the 1999 re-examination of the '085 patent (*id.* at ¶¶11, 16), and there's no reason to stay or dismiss the case on this basis. *Cognex, supra*, 2001 U.S. Dist. LEXIS 25555 (denying motion to stay patent infringement lawsuit pending a re-examination proceeding, in part because the re-

ex would not determine all the issues in the case); *Alltech v. Cenzone*, 2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007) (denying defendant's motion to stay lawsuit pending a re-ex proceeding; noting that 90% of requests for re-examination are granted, and finding that a 21-month delay of the lawsuit during a pending re-examination proceeding would prejudice the plaintiff).[1/]

### III. PRIMUS' MOTION TO DISMISS THIS LAWSUIT SHOULD BE DENIED

As noted above, RTI alleges that its '085 patent "relat[es] to the routing of telephone calls based upon cost," and that its '769 patent "relat[es] to a method for updating a database in a telephone call routing system" (Complaint ¶¶7, 15); that Primus infringes both patents through "its Lingo VoIP services and other similar services, and products and equipment to support such services . . ., in order to offer traditional voice telephony services across its VoIP platform and to enhance end user customers' voice and data networking ability" (*id.* at ¶¶9, 17); and that RTI gave Primus notice of its infringement, but when Primus refused to stop its infringing activities, RTI had no choice but to sue it for patent infringement. *Id.* at ¶¶13, 21.

These allegations are accepted as true (*Scheuer, supra*, 416 U.S. at 236; *Lunney, supra*, 319 F.3d at 554), and although Primus says that RTI's '085 patent was "rejected" in the pending re-examination proceeding, that's not true, as explained above. 35 U.S.C. §282; *Alltech, supra*, 2007 U.S. Dist. LEXIS 19989 (allowing lawsuit to proceed despite a pending re-examination proceeding). In any event, there's no re-examination proceeding relating to RTI's '769 patent, and RTI's complaint meets applicable pleading standards, since it's based on the Federal Rules'

---

[1/]  Primus also makes a throwaway argument that RTI's complaint should be dismissed because "RTI kept from Primus the fact that a request to re-examine the validity of the '085 claims had been filed in February 2006." However, Primus cites no authority, and RTI is not aware of any authority, that requires a plaintiff to advise a defendant in a patent infringement suit that the claims asserted are the subject of a re-examination, or of the status of the re-examination, as such information is publicly available on the PTO website and are of public record, available for review by anyone having a computer with an Internet connection. *See* Epstein Decl. ¶¶7-10.

Form 16, "Complaint for Patent Infringement." *See Bell, supra*, 127 S.Ct. at 1971 n.10 (2007).

Despite Primus' wild (and untrue) accusations, there's simply no basis for dismissal.[2/]

### IV. PRIMUS' MOTION TO STAY THIS LAWSUIT SHOULD ALSO BE DENIED

There's also no basis for a stay. RTI's '769 patent isn't the subject of a re-examination proceeding, so Primus' requested stay should be denied because the pending '085 re-examination won't determine all the issues in this case. *Cognex, supra*, 2001 U.S. Dist. LEXIS 25555 (denying motion to stay patent infringement lawsuit pending a re-examination proceeding).

90% of requests for re-examination get granted, and delaying suit for months or years while waiting for the '085 re-examination to conclude would prejudice RTI (*Alltech, supra*, 2007 U.S. Dist. LEXIS 19989) – especially since both patents underwent prior re-examinations, which led to the confirmation of all of their claims. Epstein Decl. ¶5. Granting a stay would also reward Primus for making outrageous accusations, since there's no evidence that RTI ever sued anybody in bad faith; Primus hasn't shown a real defense to RTI's suit; and Primus argued that RTI's '085 patent was rejected as a matter of law, when that's just not true. There's no reason to grant a stay.

---

[2/] It's not clear whether Primus refers to matters beyond RTI's complaint in support of its Rule 12(b)(6) motion or its stay motion. To the extent the Court is inclined to convert Primus' motion into a summary judgment motion, RTI requests notice and an opportunity to submit further briefs and evidence. *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002). RTI also requests leave to take discovery under Rule 56(f), since a "plaintiff is not required to know at the time of pleading all facts to establish the claim." *Arrival Star v. Descartes Sys. Group*, 2004 WL 2496622, at p. 4 (S.D.N.Y. 2004). RTI is therefore entitled to take discovery in order to develop its infringement claims and supplement its pre-filing investigation. *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1364 (Fed. Cir. 2000); *Cambridge v. Penn Nutrients*, 962 F.2d 1048, 1050 (Fed. Cir. 1992); *Loral Fairchild Corp. v. Victor Co.*, 911 F.Supp. 76, 79 (E.D. N.Y. 1996) (patent infringement plaintiff can use discovery to develop claims construction theories).

V. <u>CONCLUSION</u>

For all of the above reasons, RTI respectfully asks that Primus' motion be denied.

Dated: September 28, 2007

                                                   /s/ Mary B. Matterer
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

OF COUNSEL:

James B. Hicks
Hicks | Park LLP
824 Wilshire Blvd., Suite 300
Los Angeles, California 90017
Tel.: (213) 612-0007
jhicks@hicksparklaw.com

                                                 Attorneys for Plaintiff
*RATES TECHNOLOGY INC.*